# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| SAMUEL TURNER, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| V. ) | NO._____ |
| ) | |
| STATEBRIDGE COMPANY, LLC, ) | |
| A COLORADO LIMITED ) | |
| LIABILITY COMPANY ) | |
| ) | |
| DEFENDANT ) | |

## COMPLAINT AND JURY DEMAND
(For Discrimination in Violation of the Americans with Disabilities Act)

1. This is an action to seek redress for unlawful discrimination on the basis of disability in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*. ("ADA"). The ADA prohibits employers from denying qualified individuals because they have disabilities such as diabetes. Despite these mandated protections, Statebridge Company, LLC ("Statebridge") terminated Plaintiff Samuel Turner ("Mr. Turner"), who suffered from complications resulting from diabetes regardless of his ability to perform his job.

### Parties and Jurisdiction

2. Mr. Turner is an individual residing in the State of Colorado.

3. Statebridge Company, LLC ("Statebridge") is a Colorado limited liability company.

4. On February 5, 2019, Mr. Turner filed a timely charge of discrimination with the United States Equal Opportunity Commission ("EEOC"), a copy of which is attached as Exhibit "A.".

5. On May 15, 2019, EEOC issued to Turner a Notice of Right to Sue, a copy of which is attached as Exhibit "B".

6. This Court has personal jurisdiction over Statebridge by operation of Fed. R. Civ. Pro. 4.

7. Venue to this Court is proper because Statebridge transacts business in this District and the events complained of occurred in this District.

**Factual Allegations**

8. Mr. Turner began employment with Statebridge in March 2018.

9. During the interview process, Mr. Turner informed Amber Muhammad (n/k/a Amber Simon) ("Ms. Simon") that he had a medical condition, diabetes and complications stemming therefrom, which required him to attend ongoing doctor's appointments as he was still in a healing period. Turner is a diabetic and has had difficulties with his extremities, most particularly in his legs and feet. He has had portions of these extremities surgically treated, most recently, an amputation of one of his feet. The condition is permanent and results in impairment to one or more life functions.

10. Mr. Turner offered to provide documentation to support necessary time away from work. Ms. Simon indicated that "everything would be fine" as long as he kept Statebridge in the loop.

11. Mr. Turner began his tenure with Statebridge as a claims specialist tracking, auditing and filing new claims for Statebridge.

12. In May 2018, Turner was approached by Julie Doane ("Ms. Doane") about Statebridge's need for a resolution analyst within the legal team. Mr. Turner accepted the invitation to apply for the position and submitted an updated resume.

13. In June 2018, Mr. Turner interviewed with Sherri DeShay ("Ms. DeShay"). After completing a task and a test, Mr. Turner attended a second interview with Ms. DeShay and Statebridge Vice President and Corporate Counsel, Lisa Lyle ("Ms. Lyle"). During the interview, Ms. Lyle expressed concern about Mr. Turner's attendance, at which time she was informed of the nature and extent of Mr. Turner's physical limitations.

14. Mr. Turner informed Ms. DeShay and Ms. Lyle that his previous manager was aware of the disabling condition and had made appropriate accommodations. He also stated that his absences did not interfere with his work.

15. Mr. Turner was offered the salaried position of resolution specialist. When the offer was made, Mr. Turner was told that as a salaried employee he would have remote access to work from

home as needed to accommodate his medical situation.  These conditions of employment having been established, Mr. Turner began training for his new position.

16. During the training period, Mr. Turner required emergency surgery to attempt repair of one of his legs.  Ms. Lyle was understanding and accommodated the situation and no documentation was requested or required by Ms. Lyle.

17. Upon his return to work, Mr. Turner learned that Ms. Lyle had left on family leave.  He was instructed to work with Ms. DeShay to complete assignments as needed.

18. At this point, Mr. Turner spoke with Ms. Simon, Vice President of Human Resources, to inform her of his ongoing treatment which required him to be seen three times weekly at his home in addition to attending weekly appointments with his surgeon.  Ms. Simon told Mr. Turner not to worry, that his job was not jeopardy and that as long as he was communicating with Statebridge, everything would be fine.

19. For roughly two months, all went well and Mr. Turner was not informed of any issues with the accommodations which Statebridge had made upon offering him the job of resolution specialist.

20. In July 2018, Mr. Turner's condition worsened and required further surgery.  During his recuperation, he was able to work from the hospital, and upon his release, from home.  Upon his release from the hospital, Mr. Turner was advised that he was not to place any weight whatsoever on his foot such that it might heal.  His surgeon emailed correspondence to Statebridge informing it of the status of Mr. Turner's health and recommended that Mr. Turner be permitted to continue to work from home.  The surgeon also informed Statebridge of the need for hyperbaric treatments, without which Mr. Turner might suffer catastrophic consequences.

21. At no time during the foregoing time period was Mr. Turner informed that the quality or quantity of his work was suffering as a result of the accommodations which were being made.

22. Nevertheless, Ms. DeShay began making new demands for information from Mr. Turner while he worked from home.  She requested log-in information as well as details about specific cases on which he was working.  Mr. Turner felt increasingly harassed and targeted because he was disabled and working from home, despite the fact that his work was not suffering.

23. Mr. Turner contacted Ms. Simon and expressed frustration at the way he was being singled out and spoken to by Ms. DeShay. He also explained that he felt pressured to return to the office despite the extreme risk such a return would pose to his health.

24. On July 30, 2018, Mr. Turner returned to the office and was called into a meeting at which he was told he was being demoted to an hourly position from the salaried position he had held and performed successfully despite his disability.

25. In September 2018, Ms. Lyle returned from her family leave and met with Mr. Turner. Ms. Lyle then scheduled a meeting with her, Ms. DeShay and Mr. Turner which he believed was to work toward a resolution of issues relating to his demotion to hourly service.

26. In reality, however, the meeting confirmation was not to discuss accommodations of injury and illness but rather to conduct an annual review. This was odd because an annual review had already occurred.

27. Upon entering the meeting referred to in the preceding paragraph, Mr. Turner was placed on a final written notice. Prior to this write up, Mr., Turner had received no disciplinary action of any sort during his entire tenure with the company. He was given no opportunity to address the issues raised in the warning. In fact, of the numerous line items set forth on the final written notice, all or substantially all of them related to matters which preceded his acceptance of the promotion to a salaried position of resolution analyst on Statebridge's legal team. In other words, the facts set out to justify placing Mr. Turner on final written notice are false and pretextual.

28. In October 2018, Ms. Lyle resigned form Statebridge and Ms. DeShay became Mr. Turner's Acting Supervisor.

29. In the meantime, Mr. Turner's health was again deteriorating and at the end of October 2018, Dr. Blake Hines advised that an amputation of one of Mr. Turner's lower extremities was necessary as a life saving measure.

30. On November 5, 2018. Mr. Turner informed Ms. Simon of the surgery and told her that he would need to work from home while he recovered.

31. Ms. Simon stated, "that is not going to work." She stated that Statebridge's President, Kevin Kanouff, and Ms. DeShay were not going to agree to further accommodations which did not include Mr. Turner's continued presence at the office. Ms. Simon stated further that Mr. Turner's health came first and offered to send his personal belongings to him via federal express.

32. Mr. Turner attempted to discuss the matter, to explain that with accommodation he was able to perform, and had been performing, all of the functions of the job, a fact of which Statebridge was well aware. He stated that his previous demotion to hourly status and resultant reduction in pay were unwarranted and discriminatory. He reiterated that with appropriate accommodations, he had the ability to perform the job.

33. Instead of engaging in an interactive process or otherwise making appropriate accommodations, Mr. Turner was terminated form his position.

## FIRST CLAIM FOR RELIEF
(Violation of the American With Disabilities Act)

34. The American with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

35. Plaintiff's diabetic condition and its effects on his extremities limits at least one of Plaintiff's major life functions.

36. Plaintiff was fully qualified to be a resolution analyst and could perform all the essential functions of the position. Plaintiff successfully completed all of Statebridge's training requirements before Statebridge terminated him because he has diabetes.

37. Statebridge is a covered employee to which the ADA applies.

38. Statebridge terminated Plaintiff from employment solely because he has diabetes. Statebridge made no individualized assessment to determine whether Plaintiff could perform the essential functions of the job of resolution analyst and be employed by Statebridge, or whether a reasonable accommodation would enable him to remain employed as a resolution analyst, as is required under the ADA.

39. Statebridge's termination and disqualification of Plaintiff on the basis of his disability and Statebridge's failure to make an individualized assessment to determine whether Plaintiff could be employed by Statebridge with reasonable accommodation violated the ADA.

40. As a result of Statebridge's actions, Plaintiff has suffered and will continue to suffer both economic and non-economic harm.

**WHEREFORE**, Plaintiff requests the following relief:

a. Appropriate injunctive relief, including but not limited to reinstatement of Mr. Turner's position with Statebridge and an order restraining Statebridge from engaging in further discriminatory conduct;

b. Back pay in an amount to be determined at trial;

c. In the event reinstatement is not granted, front pay;

d. Compensatory and consequential damages, including for emotional distress;

e. Punitive damages;

f. Pre-judgment and post-judgment interest at the highest lawful rate; and

g. Such other and further relief which the Court deems proper.

**DATED this 12th day of August, 2019**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully submitted,

*/s David H. Wollins*
David H. Wollins
David H. Wollins, P.C.
950 S. Cherry Street # 512
Denver, CO 80246
(303) 758-8900
dhwollins@dhwpc-law.com